Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONG MIN PARK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOPRO, INC., NICHOLAS WOODMAN, and BRIAN MCGEE,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jong Min Park ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GoPro, Inc. ("GoPro" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

Class Action Complaint for Violation of the Federal Securities Laws

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of GoPro between November 2, 2017 and January 5, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and are headquartered in this Judicial District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased GoPro securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant GoPro develops and sells mountable and wearable cameras, and accessories in the United States and internationally. The Company is incorporated in Delaware and

its principal executive offices are located at 3000 Clearview Way, San Mateo, California 94402. GoPro's Class A common stock is traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GPRO."

8. Defendant Nicholas Woodman ("Woodman") founded GoPro in 2004 and has been its Chief Executive Officer ("CEO") since February 2004.

9. Defendant Brian McGee ("McGee") has been the Chief Financial Officer ("CFO") of GoPro since March 11, 2016.

10. Defendants Woodman and McGee are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

Class Action Complaint for Violation of the Federal Securities Laws

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## Background

15. GoPro's product offerings include, Karma, a premium remote controlled drone that retails for $799.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

16. On November 1, 2017, during aftermarket hours, GoPro held a conference call with investors and analysts to discuss its financial results for the period ended September 30, 2017. On the call, in response to an analyst's question concerning the present market demand for drones, Defendant Woodman stated that "the consumer feedback to Karma specifically, actual owners of Karma has been quite good, and so we're feeling really good about our prospects in the future there," stating in pertinent part:

**Stan Kovler**

I appreciate the response there. If I could just follow up, actually I wanted to ask about drones. So you know that you're constraining sales to some degree because of margins. Some of our work in terms of store checks is showing that maybe the attach rate or the growth in the category might be slowing a bit. I was curious about your take in terms of consumer appetite that you're seeing for the product when you do get potentially a higher margin product to market and your views on that. Thank you.

**Nicholas Woodman**

We're still seeing a lot of strength in the $1,000 range price [indiscernible] for drones. And as we've shared in the past, GoPro's Karma drone is the number two best-selling drone in North America in the $1,000 and above price point. And – but I think when we first shared that, we were high teens and we've actually grown share since then. So Karma certainly is a terrific platform for us as we further our own capabilities and value proposition for consumers with our next-generation drone offerings. And the consumer feedback to Karma specifically,

actual owners of Karma has been quite good, and so we're feeling really good about our prospects in the future there.

17. The statements referenced in ¶16 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the market prospects for Karma were untenable due to margin challenges in an extremely competitive aerial market and a hostile regulatory environment in Europe and the United States; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

18. On January 8, 2018, during pre-market hours, GoPro issued a press release titled, "GoPro Announces Preliminary Fourth Quarter 2017 Results," announcing that its reducing its global workforce by 20% and is exiting the aerial market "after selling its remaining Karma inventory," stating in pertinent part:

**GoPro Announces Preliminary Fourth Quarter 2017 Results**

NEWS PROVIDED BY
GoPro, Inc.
Jan 08, 2018, 09:00 ET

SAN MATEO, Calif., Jan. 8, 2018 /PRNewswire/ -- GoPro, Inc. (NASDAQ: GPRO) today reported certain preliminary financial results for the fourth quarter ended December 31, 2017. GoPro expects revenue to be approximately $340 million for the fourth quarter of 2017. Fourth quarter revenue includes a negative impact of approximately $80 million for price protection on HERO6 Black, HERO5 Black and HERO5 Session cameras, as well as the Karma drone.

GoPro expects GAAP gross margin for the fourth quarter of 2017 to be between 24% and 26%. Non-GAAP gross margin for the fourth quarter of 2017 is expected to be between 25% and 27%. Non-GAAP gross margin for the same period, excluding the price protection impact of $80 million and other charges of between $19 million and $21 million, is expected to be between 44% and

Class Action Complaint for Violation of the Federal Securities Laws

46%. GoPro expects GAAP operating expenses to be between $136 million and $140 million for the fourth quarter of 2017 and non-GAAP operating expenses to be between $118 million and $122 million for the same period.

GoPro ended the fourth quarter with cash and cash equivalents of $247 million, up $50 million over the third quarter of 2017.

"As we noted in our November earnings call, at the start of the holiday quarter we saw soft demand for our HERO5 Black camera," said GoPro founder and CEO Nicholas Woodman. "Despite significant marketing support, we found consumers were reluctant to purchase HERO5 Black at the same price it launched at one year earlier. Our December 10 holiday price reduction provided a sharp increase in sell-through."

Globally, HERO5 Black sell-through more than doubled in the two weeks following the December 10 price reduction, while HERO5 Session sell-through roughly tripled.

Sales of the newly introduced flagship HERO6 Black camera performed as expected during the fourth quarter. On January 7, GoPro lowered the price of its premium model, HERO6 Black from $499 to $399 to align with its good, better, best product strategy.

Initial uptake of GoPro's newly launched spherical camera, Fusion, was better than expected during the quarter.

"GoPro is committed to turning our business around in 2018," said Nicholas Woodman. "We entered the new year with strong sell-through and are excited with our hardware and software roadmap. We expect that going forward, our roadmap coupled with a lower operating expense model will enable GoPro to return to profitability and growth in the second half of 2018."

**2018 Products and Operating Expenses**

In 2018, GoPro will continue to innovate with several new products aimed at new and existing customers. GoPro's sharper focus will enable an $80 million reduction in operating expenses compared to 2017 levels, resulting in a target operating expense level of below $400 million for 2018 on a non-GAAP basis.

The lower non-GAAP operating expense target will be achieved through a variety of strategies, including:

- GoPro is reducing its global workforce from 1,254 employees as of September 30, 2017 to fewer than 1,000 employees worldwide.
- GoPro founder and CEO Nicholas Woodman will reduce his 2018 cash compensation to $1.
- Although Karma reached the #2 market position in its price band in 2017, the product faces margin challenges in an extremely competitive aerial market. Furthermore, a hostile regulatory environment in Europe and the United

Class Action Complaint for Violation of the Federal Securities Laws

> States will likely reduce the total addressable market in the years ahead. These factors make the aerial market untenable and GoPro will exit the market after selling its remaining Karma inventory. GoPro will continue to provide service and support to Karma customers.
>
> A restructuring of GoPro's business will result in an estimated aggregate charge of $23 million to $33 million, including approximately $13 million to $18 million of cash expenditures as a result of a reduction in force, substantially all of which are severance and related costs, as well as approximately $10 million to $15 million of other charges, consisting primarily of non-cash items. GoPro expects to recognize most of the restructuring charges in the first quarter of 2018. GoPro will provide more detail on its 2017 results and 2018 outlook in its fourth quarter earnings report which will take place in early February.

19. On this news, shares of GoPro fell $0.96 per share, or over 12%, from its previous closing price to close at $6.56 per share on January 8, 2018, damaging investors.

20. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of GoPro during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, GoPro securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of

Class Action Complaint for Violation of the Federal Securities Laws

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

25. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;
- whether the prices of GoPro securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

27. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- GoPro securities are traded in efficient markets;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold GoPro securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

28. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

29. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

30. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

31. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

32. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

33. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of GoPro securities during the Class Period.

34. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly

materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

35. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

36. As a result of the foregoing, the market price of GoPro securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of GoPro securities during the Class Period in purchasing GoPro securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

37. Had Plaintiff and the other members of the Class been aware that the market price of GoPro securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased GoPro securities at the artificially inflated prices that they did, or at all.

38. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

39. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of GoPro securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

42. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

43. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GoPro securities.

44. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

45. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: January 9, 2018                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff